31 So.2d 558

## In re OPINION OF THE JUSTICES.
### No. 78.

Supreme Court of Alabama.
July 30, 1947.

Senate Resolution No. 33.

By Messrs. Allen and Coleman

Whereas, there is now pending in the Legislature of Alabama Senate Bill 122 by Messrs. Henderson, Hardwick, Kendall and Clayton which provides for a refund of a portion of the State tax paid on gasoline when the gasoline is used in tractors used exclusively for agricultural purposes; and

Whereas, in view of the opinion of the Justices of the Supreme Court of Alabama as set forth in Re Opinions of the Justices No. 56, 238 Ala. 289, 190 So. 824, reasonable doubt exists as to the constitutionality of said Senate Bill 122 inasmuch as said Bill originated in the Senate; and

Whereas there is involved an important concrete constitutional question of a general public nature which entitles this body to invoke the provisions of 1940 Code of Alabama, Title 13, Section 34, with reference to obtaining a written opinion of the Justices of the Supreme Court of Alabama, or a majority thereof, on important constitutional questions, now, therefore:

Be It Resolved by the Senate of Alabama that the Justices of the Supreme Court of Alabama, or a majority thereof, are hereby respectfully requested to render this body their written opinion, as provided under said Title 13, Section 34, as to whether said Bill, a copy of which is hereto attached marked "Exhibit A" and made a part hereof, offends or is in conflict with that part of Section 70 of the Constitution of Alabama which provides in part "All bills for raising revenue shall originate in the House of Representatives."

I hereby certify the above Resolution was adopted by the Senate of Alabama July 24, 1947.

(Signed)    J. E. Speight

J. E. Speight Secretary of the Senate

Senate Bill 122 is in pertinent part as follows:

A Bill

To Be Entitled An Act To provide for a refund of a portion of the State tax paid on gasoline when the gasoline is used in propelling or operating tractors used exclusively for agricultural purposes; prescribing a procedure for effecting refunds; authorizing the Commissioner of Revenue to issue permits and make rules and regulations to administer the Act; defining violations of the Act and prescribing penalties therefore.

Be it Enacted by the Legislature of Alabama:

Section 1. The purpose of this Act is to promote agriculture in Alabama, and to encourage and foster the progress of the farmers of this State by making it possible for them to use extensively mechanized equipment in competition with the farmers and agricultural interests of surrounding states.

Section 2. As used in this Act, "refund gasoline" means gasoline used as motor fuel for operating or propelling tractors used exclusively for agricultural purposes.

Section 3. Subject to the conditions set forth in this Act, a person who purchases gasoline as defined in Section 646 of Title 51 of the 1940 Code in quantities of 50 gallons or more at any one time for use in operating or propelling tractors used exclusively for agricultural purposes is entitled to a refund of five cents of the State excise tax paid on each gallon of gasoline so purchased and used. The right to receive a tax refund is not assignable.

To the Senate of Alabama,

Montgomery, Alabama.

Sirs:

Your resolution No. 33 directs our attention to the question of whether Senate Bill 122 now pending in the Legislature "offends or is in conflict with that part of Section 70 of the Constitution of Alabama, which provides in part 'all bills for raising revenue shall originate in the House of Representatives.'"

■ We have heretofore expressed the opinion that an act to amend an existing act whose purpose is to raise revenue by which the amount to be collected under the latter act as amended is decreased or increased, is an act to raise revenue and by the terms of section 70 must originate in the House of Representatives. In re Opinion of the Justices, 238 Ala. 289, 190 So. 824; id. 232 Ala. 95, 166 So. 807; Perry County v. Selma, Marion & Memphis R. Co., 58 Ala. 546.

■ If the proposed act affects the amount of revenue which flows into the State treasury, either as an original measure, or as an amendment to one already in existence, it is one to raise revenue as provided in the first part of section 70. A "revenue bill" under the last sentence of section 70 is more restrictive. In re Opinion of the Justices, 223 Ala. 369, 136 So. 589.

■ The legislature may make an appropriation payable upon certain conditions prescribed by it and impose the duty on some designated authority to determine whether those conditions have been met by some person making claim thereto. In re Opinion of the Justices, 244 Ala. 386, 13 So.2d 674; Hawkins v. State Board of Adjustments, 242 Ala. 547, 7 So.2d 775.

■ The legislative restriction as to the house in which bills to raise revenue shall originate is as we have noted provided by section 70 of the Constitution: the legislative restriction on the power to make appropriations is provided by section 72, and there is no requirement as to the house in which it shall originate. The former relates to the receipt of revenue: the latter to its disposition. All appropriations are payable out of revenue. It is nonetheless an appropriation though required to be paid out of a certain fund in the treasury, or makes a disposition of certain tax revenue different from that provided in the act raising the revenue. State ex rel. Franklin County v. Hester, 224 Ala. 460, 140 So. 740.

■ So that the question is whether Senate Bill 122 is an exemption from an existing tax, or is an appropriation payable out of revenue thus derived. Its language is that of an appropriation. The person intended to be benefited, along with all other purchasers, must first pay the tax. The bill

furnishes machinery whereby certain persons who comply with its requirements may obtain a refund. We do not think that a provision of law for refund of taxes as by Title 51, sections 328, 332 and 890, Code, should be regarded as a revenue measure under section 70 of the Constitution, but rather as an appropriation under section 72 of the Constitution.

We think therefore that proposed Senate Bill, 122, supra, is not a bill to raise revenue which must originate in the House of Representatives under section 70 of the Constitution.

Respectfully submitted,

ARTHUR B. FOSTER,
J. ED. LIVINGSTON,
ROBERT T. SIMPSON,
DAVIS F. STAKELY,
Associate Justices.

LAWSON, Justice (dissenting).

It is with regret that I feel that I must dissent from the opinion of the majority of the Justices.

The first sentence of § 70 of the Constitution of 1901 provides: "All bills for raising revenue shall originate in the House of Representatives." Substantially the same provision is found in all our Constitutions, from that of 1819 to the last one in 1901.

In the case of Perry County v. Selma, Marion & Memphis R. Co., 58 Ala. 546, Mr. Justice Stone (later Chief Justice) in discussing the background and the effect of this provision, said:

" * * * It has been suggested that this is a mere rule for the legislature, a disregard of which does not invalidate the law. It is known to the profession that this rule was adopted from the British constitution; and that it was engrafted thereon, because the House of Commons, in their Parliament, is the only popular department of their government, chosen by the people, and directly accountable to them. In that country, unlike the rule with us, it is the rule that the House of Lords can make no amendment of such bills, but must take them, without amendment, as they leave the House of Commons. This rule is guarded with sedulous care, and is treasured, as fundamental, in the preservation of the subject's goods from unreasonable assessment and spoliation.

"With us the reason of the rule does not exist to the extent it does there, for each house of the legislature is elected by the people for a short term, and each is alike accountable to the popular will. But whether there be a reason for its maintenance or not, it has been a canon of the Federal Constitution from the date of its adoption, and of the Constitution of this State from the time of its birth. *A rule thus sanctioned and preserved—thus imbedded in the very marrow of our system—we feel not at liberty to disregard.* * * * (Emphasis supplied.)

It was definitely decided in the decision of this court from which we have just above quoted that a bill which comes under the influence of the first sentence of § 70 of the Constitution and which originates in the senate is unconstitutional.

Obviously the bill here under consideration does not attempt to "raise revenue" in the sense that it purports to authorize additional taxation. However it has heretofore been decided that a bill whose chief purpose is to decrease revenue raised by other provisions of law also comes within the influence of the first sentence of § 70 of the Constitution.

In an advisory opinion rendered to the Senate of Alabama August 18, 1939 (238 Ala. 289, 190 So. 824, 825), the Justices of this court held that a bill introduced in the senate which had for its purpose the exemption of certain types of sales from sales tax was violative of § 70 of the Constitution.

It was there said: "Any bill, we think, whose chief purpose is to create revenue, or to increase or decrease revenue as created in another act is one to raise revenue and must originate in the House of Representatives under the first sentence in Section 70 of the Constitution." See Perry County v. Selma, Marion & Memphis R. R. Co., supra.

The answer to your inquiry, therefore, depends on the answer to the question, What is the chief purpose of the bill here under consideration?

Unquestionably, if this bill becomes law it will result in a decrease in the revenue of the State of Alabama available for the

public purposes for which the gasoline tax is now used. The law now in force exacts a tax of six cents on each gallon of gasoline used in tractors. When collected the money is used for certain enumerated public purposes. Section 647, Title 51, Code 1940, as amended. (See 1945 Cumulative Pocket Part) Under the bill here considered the same six cents would be collected, but five cents of it would be refunded to the taxpayer who paid it. The net result, therefore, would be that from the tax on gasoline used in tractors the State of Alabama would have only one-sixth as much revenue which it could devote to public purposes as under existing law.

The other five-sixths of the tax paid on gasoline used in tractors would find its way back into the pockets of the man who paid the tax and that is the chief purpose of this bill.

The bill contains a provision to the effect that its purpose is to promote agriculture. But how does it purport to aid agriculture? The answer is obvious: By reducing the tax burden of the farmer who uses tractors and, as before stated, that is the chief purpose of the bill. A reduction of his tax burden naturally results in a decrease of revenue to the State.

It is said that this is an appropriation bill, not a tax reducing bill, and consequently the first sentence of § 70 of the Constitution has no application. The bill does provide for an appropriation. But the money so appropriated comes out of the gasoline tax and is to be used for the sole purpose of refunding to the taxpayer who qualifies, five-sixths of the amount of gas tax paid by him on gasoline used in tractors.

Appropriation bills can, of course, originate in the senate and it is true that every appropriation bill reduces the amount of revenue which can be thereafter used for other purposes. But the appropriation here under consideration shows on its face that it was not made for any governmental purpose, but for the purpose of enabling the State to refund to taxpayers monies collected by the State but which were not intended to be retained and used in the public interest.

The mere fact that a bill carries an appropriation provision does not relieve it from the influence of the first sentence of § 70 of the Constitution. For example, it is clear that a bill which originated in the senate would violate such provision although it provided for an appropriation to a department of state government of a named sum of money to be used for a specified purpose, if it also authorized the levying of a tax for the purpose of meeting the appropriation. True, the illustration just used is where the bill purports to authorize additional taxation. But since the first sentence of § 70, as before indicated, also applies to bills whose chief purpose is to decrease revenue raised by other legislation, the illustration is here applicable as an answer to the contention that § 70 is not violated by the bill here under consideration merely because it contains an appropriation.

In my opinion the conclusion of the majority that the chief purpose of this bill is not to decrease the revenue of the State of Alabama by decreasing taxes, but is an appropriation bill, rings the death knell of this legislation if and when it is challenged on the ground that it is an appropriation of public monies to private individuals for nongovernmental purposes. The majority opinion does not say that such an appropriation is legal. It leaves that question unanswered. But I insist that the monies of the State of Alabama cannot be appropriated to farmers using tractors where there is no legal or moral obligation on the part of the State to do so. In other words, in my opinion the only way in which the appropriation involved in this bill can be upheld is upon the theory that the State has collected from the taxpayer money which it cannot legally retain because this bill operates to relieve the taxpayer from all but one cent of the gasoline tax on gasoline used in tractors.

In order to uphold the instant bill on the ground that it is an appropriation of State monies, it will have to be under the theory that the legislature of this state, in order to promote agriculture, may use State funds to in effect subsidize farmers. We have not come this far as yet. But this bill does not purport to provide a means of giving to the farmers of Alabama

mechanized equipment. I am sure that many farmers would be benefitted if they had such equipment, although I am not willing at this time to say that such equipment can be furnished to them out of State funds. But if this is an appropriation, it appropriates State funds to those farmers who already have mechanized equipment, thereby increasing the advantage which they have already over their less fortunate neighbor, the man who makes his crop with a horse or mule. How can it be reasonably said that such is a legal appropriation?

Unquestionably the legislature has the right to provide for tax exemptions and if a bill of this nature is introduced in the house of representatives as a tax exemption bill, the possibility of attack on the ground above indicated would be avoided. But in spite of what I contend to be the obvious purpose of this bill, namely, that it is a tax reduction bill, the majority see fit to conclude to the contrary and rest their conclusion on the ground that the bill is an appropriation bill, thereby jeopardizing its constitutionality regardless of the house of the legislature in which it originates.

There seems to be no doubt but that this bill could not be legally introduced in the senate if it purported to amend the existing gasoline tax laws by exempting farmers from paying all of the tax now collectible on gasoline used in tractors except one cent. Perry County v. Selma, Marion & Memphis R. R. Co., supra; In re Opinion of the Justices, 232 Ala. 95, 166 So. 807; In re Opinions of the Justices, 238 Ala. 289, 190 So. 824. And this would, of course, be true if the bill contained a statement that the purpose of the bill was to promote agriculture.

In the bill here under consideration, for administrative purposes and no doubt to prevent tax evasion, a method of refund is provided rather than exemption. The result is the same as if exemption had been provided. The State of Alabama is deprived of revenue and the taxpayer is relieved of a tax burden. I think it is clear that such is the chief purpose of the bill.

Nothing that I have said is to be construed as an expression as to the wisdom of such legislation. That is a matter for the legislature.

I am constrained to the conclusion that Senate Bill No. 122 violates § 70 of the Constitution.

BROWN, J., concurs.

GARDNER, Chief Justice.

Looking through form to substance, I am fully persuaded the bill is one to exempt from taxation, and as such should originate in the House.

The authorities are noted in the foregoing opinion of Justice LAWSON and there is no occasion to reiterate the reasoning therein employed, as I am in full accord therewith so far as relates to the inquiry here propounded.

The matter of the constitutionality of the bill viewed as an appropriation bill, is not embraced in the inquiry, nor do I consider that the bill can be properly so interpreted. I therefore see no occasion for a consideration of that question and of consequence withhold comment thereon. Otherwise I fully concur with the opinion of Justice LAWSON.

BROWN, Justice.

I am further of the opinion that said Act if passed would violate § 100 of the Constitution in that it remits and releases an accrued obligation to the State of Alabama. I am further of the opinion that it violates § 45 of the Constitution, which requires that each law shall contain but one subject, which shall be clearly expressed in the title.