To the Members of the Senate of the State of Alabama
State Capitol
Montgomery, Alabama
Dear Sirs:
On April 5, 1978, we received from you copies of Senate Resolution 432, which reads, as follows:
“RESOLVED BY THE SENATE OF ALABAMA,
That the Honorable Chief Justice and Associate Justices of the Supreme Court of Alabama, or a majority of them, are respectfully requested to give this body their written opinions concerning the following important constitutional question which has arisen in connection with the pending measure, S.C. 759, which is attached hereto and made a part hereof:
“Does Senate Bill 759 violate Section 70 of the Constitution of Alabama which provides that revenue raising bills shall originate in the House of Representatives?
“RESOLVED FURTHER, That the Secretary of the Senate is directed to send nine true copies of S.B. 759 forthwith to the Clerk of the Supreme Court.
*332 “By Mr. Peden
S. 759
RFD — P & T
RD 1-4-4-78
SYNOPSIS: This bill provides for the annual distribution to certain counties, municipalities and public agencies of a percentage of the amounts paid to the state by federal agencies in lieu of ad valorem taxes.
“A BILL TO BE ENTITLED AN ACT
“To provide for the annual distribution to certain counties, municipalities and public agencies of a percentage of the amount paid to the state by federal agencies in lieu of ad valorem taxes; and to repeal conflicting laws.
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. Commencing for the fiscal year beginning October 1,1979, twenty percent (20%) of any payments made to the state by any federal agencies in lieu of ad valorem taxes shall be paid back, to the counties, municipalities, and public agencies therein where the property is located as provided herein and in fiscal years beginning after such date the percent of payments back to the counties and municipalities shall be increased ten percent (10%) each fiscal year thereafter until eighty percent (80%) of the annual receipts are so distributed annually.
“Distribution herein provided shall be made to the governing bodies of said counties. However, the legislature may prescribe other distribution within such counties to local governments and public agencies therein.
“Any such payments by a federal agency which has as its principal business the production of power shall be distributed as follows:
“(A) Eighty percent of said amount shall be distributed among the counties in the same proportion that the amount of such agency’s power sales revenue generated in each county, less direct sales by such agency to industry, bears to the total amount of such agency’s power sales revenue generated in all counties of the state served by such agency.
“(B) Ten percent of said amount shall be distributed among the counties in the same proportion that the dollar value amount of such agency’s properties and reservoir lands in each county bears to the total dollar value of all such agency’s properties and reservoir lands in all counties served by such agency.
“(C) Ten percent of said amount shall be distributed among the counties in the same proportion that the amount of such agency’s direct power sales to industry in each county bears to the total amount of such agency’s power sales revenue generated in such manner in all counties of the state served by TV A.
“Section 2. Any amount received by any county directly from such agency as payment in lieu of taxes shall be paid over to the state for redistribution according to the formula provided in Section 1 hereof.
“Section 3. Any such payments by any other federal agencies shall be distributed on the basis of the value of the property located in a county. Any portion of a county’s share of said payments is to be paid to the municipalities in the county in the same proportion that the population of each municipality bears to the population of the entire county. For the purposes of this section, the population of the county and each municipality therein shall be determined by the 1970 or any subsequent federal decennial census.
“Section 4. The provisions of this act are severable. If any part of the act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
“Section 5. All laws or parts of laws which conflict with this act are hereby repealed.
“Section 6. This act shall become effective immediately upon its passage and ap *333 proval by the Governor, or upon its otherwise becoming a law.”
The answer to the question posed in Senate Resolution 432 is in the negative. Section 70, Constitution of Alabama, 1901, provides:
“All bills for raising revenue shall originate in the house of representatives. The governor, auditor, and attorney-general shall, before each regular session of the legislature, prepare a general revenue bill to be submitted to the legislature, for its information, and the secretary of state shall have printed for the use of the legislature a sufficient number of copies of the bill so prepared, which the governor shall transmit to the house of representatives as soon as organized, to be used or dealt with as that house may elect. The senate may propose amendments to revenue bills. No revenue bill shall be passed during the last five days of the session.”
As we read Senate Bill 759, it would provide for the annual distribution to certain counties, municipalities and public agencies a percentage of the amount paid to the state by certain federal agencies in lieu of ad valorem taxes.
We are of the opinion that the bill proposes to change the distribution of certain funds which are received by the state, but we are of the opinion that the proposed bill is not a bill for raising revenue under the terms of Section 70 of the Constitution of Alabama, 1901. In State ex rel. Franklin County v. Hester, 224 Ala. 460, 140 So. 744 (1932), this court stated:
“The purpose of this suit is to test the constitutionality of the Act of July 22, 1931. Acts. p. 604.
“The title of that act purports to amend section 4V2 of the General Revenue Act of 1919, p. 284. No other feature of the act refers in terms to the Revenue Act of 1919. But it relates to the matter embraced in section 4V2 of the Revenue Act. That act created a trial tax of $3 in every case in the circuit court and directed its payment into the general funds of the state treasury. The act of 1931 re-enacts the provision for a trial tax fixing the same amount, but provides that one-half of it shall be paid to the state and one-half to the county, and that the clerk or register may retain a commission of 5 per cent. The act, therefore, does not •raise, increase, or decrease revenue.
s|c afc ‡ # ‡ ‡
“. .We think it is clear that the mere fact that a bill proposes to change some features of the revenue act with respect to the disposition of funds raised under its terms does not make it a ‘revenue bill’ regulated by the provisions of Constitution section 70. Such a bill is not ‘in the nature of a general revenue bill.’ ”
Respectfully submitted,
C. C. TORBERT, Jr., Chief Justice
JAMES N. BLOODWORTH
HUGH MADDOX
RENEAU P. ALMON
JANIE L. SHORES
ERIC EMBRY
SAM A. BEATTY
Associate Justices